**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

---

| | |
|---|---|
| **BLUEPRINT CAPITAL ADVISORS, LLC,** | **Civil Action No. 25-1995 (JXN) (MAH)** |
| **Plaintiff,** | |
| **v.** | **OPINION** |
| **STATE OF NEW JERSEY, et al.,** | |
| **Defendants.** | |

**HAMMER, United States Magistrate Judge**

This matter comes before the Court by way of Plaintiff Blueprint Capital Advisors'
("BCA") April 14, 2025 letter memorandum that asks the Court to compel non-parties, Doug
Ostrover ("Ostrover") and Alan Kirshenbaum ("Kirshenbaum," and together with Ostrover, the
"Non-Parties"), to produce documents that, BCA asserts, are relevant to their involvement with
an alleged conspiracy between BlackRock, Inc., and Blackrock Alternative Advisors
(collectively, "BlackRock") and the New Jersey Division of Investment ("DOI") to invest in Owl
Rock. Pl.'s Letter Br., April 14, 2025, D.E. 21. The Non-Parties oppose. Opp'n, April 28,
2025, D.E. 23. For the reasons set forth herein, the Court denies BCA's motion.

    **I.    BACKGROUND**

        **A.  The Underlying Litigation**

The instant subpoena dispute arises out of discovery that is ongoing in *Blueprint Capital
Advisors LLC v. State of New Jersey et al.,* Civ. No. 20-7663 (JXN)(MAH). Following Rule 12
motion practice in that matter, BCA has claims against various officials for the State of New
Jersey and DOI, as well as BlackRock, Cliffwater, LLC ("Cliffwater"), Owl Rock Capital

1

Corporation ("Owl Rock"), Samantha Rosenstock ("Rosenstock"), and Timothy Walsh ("Walsh") (collectively "Defendants"). *Blue Capital Advisors, LLC v. Murphy, et al.*, No. 20-7663 (the "Underlying Litigation"), Am. Compl., D.E. 78. Those claims include discrimination in violation of 42 U.S.C. § 1981 and § 1983, the New Jersey Civil Rights Act, racketeering in violation of 18 U.S.C. § 1962 and N.J.S.A. 2C:41-2, breach of contract, fiduciary duty, and claims for unfair competition, civil conspiracy, fraud, commercial disparagement, and tortious interference. Op., D.E. 201 & Order, D.E. 202.

### B. The Non-Parties

BCA contends that the information sought from the Non-Parties concerns its claims against Owl Rock and Defendant Walsh. BCA alleges that Owl Rock and its employees participated in a scheme to misappropriate BCA's proprietary investment program (the "FAIR Program") in exchange for a $600 million anchor investment from the DOI. BCA alleges that BlackRock created a co-investment vehicle to facilitate the DOI's investment in Owl Rock, structured in a way that satisfied the legal and structural requirements for New Jersey's participation. *See* Pl.'s Letter Br., D.E. 21, at 3-6.

BCA alleges that Walsh, a former Director of DOI, served as an "undisclosed placement agent to Owl Rock," while Walsh was concurrently advising BCA in its negotiations with the DOI. *Id.* at 3. BCA claims that Walsh assisted Owl Rock in its alleged misappropriation of the FAIR program in exchange for the DOI's anchor investment of $600 million. *Id.* at 3-4; Opp'n, D.E. 23, at 2. Although Walsh was no longer directly employed by the DOI, BCA contends that he continued to wield significant influence, which could have materially advanced the execution of the alleged scheme and larger conspiracy. *See* Pl.'s Letter Br., D.E. 21, at 2.

BCA contends that Ostrover, who is a founder and co-CEO of Owl Rock, and Kirshenbaum, who is the COO of Owl Rock, aided and abetted the conspiracy by facilitating Walsh's involvement with Owl Rock. BCA alleges that Ostrover, Kirshenbaum, and Walsh withheld disclosure of Walsh's presence and role within Owl Rock until after DOI had indicated its intent to proceed with BlackRock and utilize the misappropriated Program. *See id.* at 3-6. According to BCA, Ostrover contacted Walsh in December 2015 to inform him of his intent to create Owl Rock. *Id*. at 2. Ostrover mentioned to Walsh that he "wanted New Jersey to be one of the firm's anchor investors." *Id*. at 3. (citing Ex. 3 (BCA_0061546)). BCA alleges that Ostrover recruited Walsh to secure an anchor investment from DOI, coordinate a plan to transfer BCA's business model to BlackRock as part of a *quid pro quo*, and compensated Walsh for his efforts. *Id*. at 4. BCA further claims that Walsh kept Ostrover informed of his communications with BlackRock and the DOI. *Id.* BCA alleges that Kirshenbaum worked to conceal Walsh's role at Owl Rock—knowing it could jeopardize the sought-after investment—by keeping Walsh off of written records while still involving him internally and encouraging off-the-record contact with the DOI. *Id.*

### C. The Instant Motion to Compel

On July 16, 2024, BCA issued the Non-Party subpoenas. Mot. to Compel, D.E. 1, Ex. 18 & 19.[1] The Non-Parties objected. *Id.*, Ex. 20; Declaration of Christopher Fernandez ("Fernandez Decl."), D.E. 19, Ex. F. The parties met-and-conferred to narrow the scope of the requests and allow for production. Fernandez Decl., D.E. 19, Ex. C. On September 27, 2024,

---

[1] Both BCA and the Non-Parties cite to exhibits in the parties' respective prior submissions. Yet the Court's March 31, 2025 Order [D.E. 20] clearly directed the parties not to incorporate by reference their prior briefing, and instead to include all arguments and relevant materials in their new submissions. Nonetheless, the Court considers them for purposes of completeness.

BCA issued additional requests for production to Owl Rock.  *See* Opp'n, D.E. 23, at 5.  Owl

Rock responded and objected to BCA's requests.  Fernandez Decl., D.E. 19, Ex. H.  BCA and

the Non-Parties met-and-conferred to resolve the issues surrounding the additional requests for

production and the Non-Party Subpoenas on November 6, 2024.  *See* Opp'n, D.E. 23, at 5.  The

parties were unable to resolve their disputes concerning the subpoenas.  *Id.*

     BCA initially filed this action to enforce the subpoenas in the Southern District of New

York.  However, the Non-Parties consented to transfer of this case to this District.  *See* Order,

Mar. 19, 2025, D.E. 14.  On March 31, 2025, the Undersigned ordered the parties to meet-and-

confer "to narrow down the scope of the disputed items." Order, D.E. 20.  BCA's April 14, 2025

letter renewed its application to compel the Non-Parties' compliance with the subpoenas.  Pl.'s

Letter Br., D.E. 21.

     The parties have resolved several disputes concerning the subpoenas.  *Id*. at 1; Opp'n, at

3.[2]  But there remain outstanding issues as to two categories of documents.  First, BCA seeks

pre-2015 documents that it argues will demonstrate the existence of an "associated-in-fact

Enterprise . . . and Owl Rock's role [in facilitating] its illegal scheme."  The pertinent requests as

are follows:

> **Request No. 9:**  All documents and communications from 2010 to
> present concerning Timothy Walsh's prior employment at the DOI,
> including but not limited to any investment deals awarded to
> Blackstone, GSO Capital Partners, and/or BlackRock during Mr.
> Walsh's tenure as DOI Director. . . .
>
> **Request No. 10:**  All documents and communications from 2010
> to present concerning Timothy Walsh's relationships, meetings,
> and/or communications with the DOI and SIC, including but not
> limited to Christopher McDonough, Jason MacDonald, Samantha

---

[2]  The parties had a dispute as to Requests 17, 18, and 19.  However, they report that BCA has
withdrawn those requests.

Rosenstock and Thomas Byrne, and any expenses reimbursed to
Mr. Walsh by You or Owl Rock for such meetings. . . .

**Request No. 12:**  All documents and communications from 2010
to present concerning Timothy Walsh's relationships, meetings,
and/or communications with BlackRock, including but not limited
to Donald Perault, Rob Kapito, Obie McKenzie, Abigail Geller,
and Ed Rzeszowki. . . .

Opp'n, D.E. 23-3, App. A; *see also* Pl.'s Letter Br., D.E. 21, at 2.

Second, BCA seeks documents from 2016 to 2020 that describe or relate to the creation

of a co-investment vehicle used by the defendants to channel DOI's investments into Owl Rock's

funds.  Pl.'s Letter Br., D.E. 21, at 1; Opp'n, D.E. 23, at 4.  The pertinent requests are as follows:

**Request No. 16:**  All documents and communications from any
BlackRock investment with Owl Rock, including but not limited to
the investments by BCF IV (OS), Inc.; BCF IV T1 (OS), Inc.; BCF
IV (Parallel), Inc.; Co-Investment Fund IV, LP – US Taxable
Series; Co-Investment Fund IV, LP – Z US Taxable Series; and
Co-Investment Fund IV, LP – US Tax Exempt Series, with Owl
Rock Capital Holdings LLC. . . .

Opp'n, D.E. 23-3, App. A.

BCA argues the requested documents are necessary to establish Owl Rock's (1) alleged

knowledge of and "substantial assistance to . . . the RICO Enterprise"; (2) Owl Rock's purported

motive in securing quid pro quo investments from the DOI and BlackRock; and (3) Ostrover and

Kirshenbaum's involvement "in the direction and execution of the scheme."  Pl.'s Letter Br.,

D.E. 21, at 6.  BCA broadly argues that the Non-Parties' personal and business emails will

produce correspondence related to this claim from the years before Owl Rock's formation and

during its early stages as a company.  *Id.* at 6.  BCA further contends that Ostrover and

Kirshenbaum, as principals of Owl Rock, are likely to have relevant knowledge about the DOI's

attempts to involve BlackRock as the fund administrator for Owl Rock's co-investment vehicle,

which BCA alleges was to bypass regulatory restrictions.  *Id.* at 7.

5

The Non-Parties respond that BCA's requests lack a discoverable basis under Federal Rules of Civil Procedure 26 and 45 for several reasons.  First, they contend that BCA has failed to explain the relevance of the Owl Rock's co-investment vehicle to the alleged scheme.  Opp'n, D.E. 23, at 7.  Second, they contend that BCA has not demonstrated that they likely possess responsive material on their personal devices.  *Id.* at 7.  Third, the Non-Parties contend that any documents that pre-date Owl Rock's formation are irrelevant and are not tied to any claim in the Amended Complaint.  *Id.* at 8 (citing Underlying Litigation, Am. Compl., D.E. 78, ¶ 60).  Along those lines, the Non-Parties argue BCA's claims are merely speculative and fail to showcase "any connection between DOI's investments with Owl Rock and BlackRock, or that discovery dating back to 2010 is even remotely warranted." *Id.* at 9.  Fourth, the Non-Parties contend that the documents cited by BCA reflect only routine social interactions between Walsh and other Defendants, and do not support any inference of a conspiracy or quid pro quo scheme.  *Id.*

## II.  ANALYSIS

### A.  Legal Standard

Federal Rule of Civil Procedure 45 requires that subpoenas avoid imposing undue burdens and must protect non-parties from significant compliance costs.  *DIRECTV, Inc. v. Richards*, No. 03-5606, 2005 WL 1514187, at *2 (D.N.J. June 27, 2005) ("A subpoena causes an undue burden if the request 'is unreasonable or oppressive.'").  If a party receives an objection from the commanded party, it may move the court in the district where compliance is required to compel production or inspection, provided it gives notice.  Fed. R. Civ. P. 45(d)(2)(B)(i).

A Rule 45 subpoena must comply with the permissible scope of discovery defined by Federal Rule of Civil Procedure 26(b)(1).  *See also* Fed. R. Evid. 401 ("Evidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the

evidence . . . ."). The Court considers several factors when determining the relevance of a subpoena, including: "(1) the party's need for the production; (2) the nature and importance of the litigation; (3) the relevance of the material; (4) the breadth of the request for production; (5) the time period covered by the request; (6) the particularity with which the documents are described; and (7) the burden imposed on the subpoenaed party." *In re Lazaridis*, 865 F. Supp. 2d 521, 524 (D.N.J. 2011) (citing *Schmulovich v. 1161 Rt. 9 LLC*, No. 07-597, 2007 WL 2362598, at *4 (D.N.J. Aug. 15, 2007)). Once the issuing party establishes that the documents sought are relevant to the claims or defenses at issue, the burden shifts to the party resisting discovery to demonstrate why the Court should not require production. *See Biotechnology Value Fund L.P. v. Celera Corp.*, No. 14-4046, 2014 WL 4272732, at *1 (D.N.J. Aug. 28, 2014); *DIRECTV, Inc.*, 2005 WL 1514187 at *2. A party may carry this burden by showing that the request is overly broad, unduly burdensome, or otherwise improper.

The purpose of discovery is to help a party substantiate a claim or defense that it reasonably believes is viable. It is not to determine whether a claim has any basis in the first place. *Micro Motion, Inc., v. Kane Steel Co., Inc.*, 894 F.2d 1318, 1327 (Fed. Cir. 1990) (explaining that discovery is "designed to assist a party to prove a claim it reasonably believes to be viable without discovery, not to find out if it has any basis for a claim"). *See also Smith v. Lyons, Doughty & Veldhuius, P.C.*, Civ. No. 07-5139, 2008 WL 2885887, *5 (D.N.J. July 23, 2008) ("To state a viable claim, a plaintiff must make factual allegations that are 'enough to raise a right to relief above the speculative level on the assumption that all of the Complaint's allegations are true (even if doubtful in fact) . . . The purpose of discovery is to uncover evidence of the facts pleaded in the Complaint . . . not 'to find a cause of action.'" (quoting *Ranke v. Sanofi-Synthelabo, Inc.,* 436 F.3d 197, 204 (3d Cir. 2006)). This standard prevents parties from

using discovery to "go fishing" through overbroad discovery requests based only on suspicion or speculation. *See Korotki v. Cooper Levenson, Apr., Niedlman & Wagenheim, P.A.*, 20-11050, 2022 WL 2191519, at *5-7 (D.N.J. June 17, 2022); *Hashem v. Hunterdon Cnty.*, No. 15-8585, 2017 WL 2215122, at *3 (D.N.J. May 18, 2017). This Court has broad discretion to determine the enforceability of a subpoena and may modify or quash it if it exceeds the scope of relevant and admissible discovery. *See Scmulovich*, 2007 WL 2362598, at *2; *Malhan v. Grewal*, No. 16-8495, 2020 WL 6391180, at *5 (D.N.J. Nov. 2, 2020) (quoting *Biotechnology Value Fund*, 2014 WL 4272732, at *1).

### B. Discussion

BCA asks the Court to compel the Non-Parties to comply with a subpoena seeking: (1) 2016–2020 documents concerning a co-investment vehicle used by Defendants to direct the DOI's investments into Owl Rock's funds; and (2) pre-2015 documents to establish an "associated-in-fact Enterprise" and Owl Rock's role in its alleged illegal scheme. Pl.'s Letter Br., D.E. 21, at 1. The record before the Court does not support either request under Rule 26, and the Court will deny BCA's request to enforce the subpoenas.

The Court starts by assessing whether the documents that BCA seeks are relevant to its claims. The Non-Parties are principals for Defendant Owl Rock. BCA argues that the requested documents support its theory that the Non-Parties and Defendant Owl Rock secretly engaged Defendant Walsh as a placement agent in a scheme—allegedly aided and abetted by the Non-Parties—to misappropriate BCA's FAIR Program in exchange for a $600 million anchor investment from the DOI. *Id.* at 3.

As to the request regarding Owl Rock's co-investment vehicle, BCA's explanation as to how the request relates to BCA's claims is unclear, and falls well short of Rule 26. *See* Opp'n,

D.E. 23-3, App. A (Request No. 16). BCA contends that the DOI and Defendants utilized the co-investment vehicle to circumvent regulatory limitations so that the DOI could invest and work with Owl Rock. BCA argues that the DOI's willingness to work around regulatory limitations for Owl Rock but not BCA demonstrates the DOI's "pretextual imposition." Thus, information concerning the co-investment vehicle could establish Owl Rock's "motive to obtain . . . quid pro investments from the DOI and BlackRock." But that theory appears nowhere in the Amended Complaint. *See* Civ. No. 20-7663 (JXN)(MAH), Am. Compl., D.E. 78, ¶¶ 18, 60, 62, 73, 88-90, 102, 111, 122, 145, 300-02, 304, 316-17, 321-23, 325.

BCA points to certain portions of the Amended Complaint to suggest this theory was pled. *See* Pl.'s Letter Br., D.E. 21, at 7 (citing Am. Compl., D.E. 78, ¶¶ 112-13, 116, 124-26). But those portions of the Amended Complaint fail to mention Owl Rock, either of the Non-Parties, or Owl Rock's co-investment vehicle. There is no clear, or clearly plead, connection between the co-investment vehicle and Plaintiff's Amended Complaint. *See Micro Motion, Inc.*, 894 F.2d at 1327.

To overcome this tenuous connection, BCA provides two email threads it contends evidence the Non-Parties' involvement with the direction and execution of the RICO enterprise. Pl.'s Letter Br., D.E. 21, at 6-7 (citing *Id.* Exs. A and B). However, those exhibits merely explain the legal and logistical framework required for the DOI to work with Owl Rock and BlackRock. *Id.*, Exs. A and B.[3] Thus, compelling the Non-Parties to produce the documents requested in Request No. 16 would be permitting an inquiry without a factual basis or an

---

[3] BCA references additional emails. *See* Pl.'s Letter, D.E. 21, at 6-7 (citing exhibit 6). However, the emails are references to the prior motion, which was improperly filed as a redacted version, and the pertinent portions of those emails are redacted and are not before the Undersigned.

explained connection to Plaintiff's claims.  There is no demonstration of relevance, and the Court is left to speculate whether and how the material is discoverable.  But speculation, without more, is insufficient to enforce compliance with a subpoena.  *Hashem*, 2017 WL 2215122, at \*3 ("Subpoenaed information is not relevant to subject matter involved in the pending action if the inquiry is based on the party's mere suspicion or speculation.").

The speculative nature of BCA's request not only fails to satisfy the relevance requirement under Rule 26, but it also renders it unduly burdensome to require the Non-Parties to produce, for a four-year period, electronically stored information from their personal devices. *See* Fed. R. Civ. P. 26(b)(1).  This Court has noted on multiple occasions that non-parties are "afforded greater protection from discovery than a normal party." *See Walgreens Specialty Pharm., LLC v. Atrium Admin. Servs.*, No. 19-12756, 2013 WL 4537790, at \*7 (D.N.J. Oct. 13, 2020); *Kelley v. Enhanced Recovery Co., LLC*, No. 15-6527, 2016 WL 8673055, at \*2 (D.N.J. Oct. 7, 2016); *Chazanow v. Sussex Bank*, No. 11-1094, 2014 WL 2965697, at \*3 (D.N.J. July 1, 2014); *Stamy v. Packer*, 138 F.R.D. 412, 419 (D.N.J. 1990).  Therefore, the Court denies the request to compel the Non-Parties to turn over documents from 2016 to 2020 relating to a co-investment vehicle.  Without a clear connection to the existing claims, these requests are closer to a fishing expedition than targeted discovery relevant to BCA's claims against Owl Rock.

As to Requests No. 9, 10, and 12, BCA requests documents and communications concerning Timothy Walsh's:  (1) prior employment at the DOI and investment deals related to Blackstone, GSO Capital Partners, and/or BlackRock; (2) relationships, meetings, and communications with the DOI and SIC, including with the State Defendants, and any epxneses reimbursed to Mr. Walsh by the Non-Parties or Owl Rock for such meetings; and (3) relationships, meetings, and/or communications with BlackRock, including but not limited to

10

Donald Perault, Rob Kapito, Obie McKenzie, Abigail Geller, and Ed Rzeszowski.  The Non-Parties argue that the scope of these requests is unduly burdensome because BCA seeks documents and communications from before Owl Rock existed—2010 to 2015.

The Non-Parties agreed to produce documents per discovery parameters "already agreed to by [BCA]."  Opp'n, D.E. 23, at 4; *see also id.*, App. A.  BCA insists that the Non-Parties must submit documents related to issues that were "never mentioned in the Amended Complaint or in any brief."  *Id*. at 3.  Additionally, the requested documents cover a period that exceeds the previously agreed-upon timeframe during party discovery, and BCA issued the subpoenas close to two months after the Court-imposed deadline for discovery disputes.  *Id.*; Civ. No. 20-7663 (JXN) (MAH), Order, Apr. 17, 2024, D.E. 314.  There is no valid basis for subjecting the Non-Parties to such an overly burdensome document production.  Expanding the scope to encompass a significantly broader timeframe, including years preceding the very existence of Owl Rock, is unwarranted.  These requests, at this juncture, seemingly intend to generate new allegations without sufficient factual support.  Any documents relevant to BCA's claims and in the possession of the Non-Parties would fall within the discovery parameters already established.  Opp'n, D.E. 23, App. A.

BCA has failed to present demonstrate the need for pre-2015 documents and communications.  And even assuming the documents existed, it is reasonable to conclude that BCA could have requested them from Defendants.  There are no documents before the Court that demonstrate the disputed time periods would help solidify BCA's claims.  At this juncture, the Court concludes that documents that predate Owl Rock's existence are irrelevant and unduly burdensome as subpoenaed from a non-party, and should not be produced.  Therefore, as to

Requests No. 9, 10, and 12, the requests are limited to documents and communications from 2015 to present.

## III.  CONCLUSION

For the reasons above, the Court will deny BCA's motion to compel the Non-Parties' response to Request No. 16.  The Court will limit BCA's Request No. 9, 10, and 12 to documents and communications from 2015 to present.  An appropriate Order will follow.

*s/ Michael A. Hammer*_____
**Hon. Michael A. Hammer**
**United States Magistrate Judge**

Dated: June 26, 2025